# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

TERRI M. PRETTYMAN,
    Plaintiff,

       v.                           Civil Action No. 1:18cv122

LTF CLUB OPERATIONS CO., INC.,
    Defendant.

## MEMORANDUM OPINION

In this Title VII and ADEA action, plaintiff, a former group fitness manager at defendant's Fairfax, VA fitness club, alleges (i) that her immediate supervisor, Devin Nickerson ("Nickerson"), discriminated against her on the basis of her religion and age, (ii) that Nickerson created a hostile work environment by making derogatory statements about her age and religion, and (iii) that Jorge Hernandez ("Hernandez"), the senior general manager at the fitness club, retaliated against her for reporting Nickerson's discriminatory comments.[1] Defendant has moved for summary judgment on all of plaintiff's claims. Although plaintiff opposes the motions, she has not created triable issues of fact as to her Title VII and ADEA disparate treatment claims, her ADEA hostile work environment claim, and her retaliation claim. Yet, plaintiff has produced sufficient record evidence to

---

[1] Title VII forbids employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and also prohibits retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3. Similarly, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., prohibits discrimination in employment on the basis of age.

1

create a triable issue of fact as to her Title VII hostile work environment claim.

**I.**

Defendant's summary judgment motion complies with the federal and local rules by setting forth its statement of undisputed material fact in separately numbered paragraphs. Plaintiff also complied with the rules by responding to each of defendant's undisputed facts and by including her own list of undisputed facts. From these pleadings, it appears that although certain facts are disputed, the following facts are uncontested:

- Defendant operates a fitness/health club in Fairfax, Virginia and employed plaintiff for almost nine years.

- Nickerson, plaintiff's immediate supervisor, has been employed with defendant since 2003 and has been the General Manager of defendant's Fairfax fitness club since 2013.

- Hernandez has been a Senior General Manager with defendant since 2010.

- On December 19, 2007, plaintiff was hired by defendant as a fitness group instructor.

- On October 30, 2013, Nickerson promoted plaintiff to Group Fitness Department Head. At the time of plaintiff's promotion, she was 54 years old.[2]

- Plaintiff is Jewish.

- In March 2017, plaintiff was responsible for organizing and hosting an event for customers at the fitness center and, as part of the planning, plaintiff engaged in a heated argument with Melanie Heidt, the manager of the café at the fitness center.

- On March 9, 2017, Nickerson had a one-on-one meeting with plaintiff and discussed her interactions with Ms. Heidt.

---

[2] Plaintiff was born on August 1, 1959.

- On March 10, 2017, plaintiff contacted defendant's employee relations specialist, Mark Savage, and reported that Nickerson had made anti-Semitic and ageist remarks to plaintiff over the course of her nine years in defendant's employ.

- On March 13, 2017, plaintiff had an in-person meeting with Hernandez to discuss what occurred at the March 9th meeting.

- At the end of the March 13th meeting, plaintiff handed Hernandez an envelope containing a letter she had written. The letter states that at the March 9, 2017 meeting between plaintiff and Nickerson, plaintiff "called [Nickerson] a liar, and gave him [her] notice." Def.'s Ex. I.

- On May 1, 2017, Nickerson hired Amelia Lotz Chung, a 41-year-old woman at the time of her hire, as the Studio Manager to replace plaintiff.

Although the parties appear to agree on the above-recited facts, they are contesting the following facts:

- Whether plaintiff resigned or was terminated.

    - Defendant contends that during the March 9, 2017 meeting between plaintiff and Nickerson, plaintiff called Nickerson a liar, resigned and offered Nickerson her two-week notice.

    - By contrast, plaintiff claims that during the March 9th meeting, Nickerson began to criticize her sharply and she said, "I feel like you want me to quit. I guess you just want me to give my two weeks' notice," and Nickerson then stated that he accepted her resignation. Plaintiff contends that she never intended to resign, and that Nickerson twisted her words to achieve his desired result: *i.e.* plaintiff's termination.

- Whether Nickerson and other employees made discriminatory remarks to plaintiff.

    - Plaintiff claims that Nickerson made a host of ageist comments throughout her tenure at defendant's fitness center, including saying: (i) that she is "as old as the hills," (ii) that plaintiff reminds Nickerson of his "pain in the ass mother," and (iii) that plaintiff should "become friends with and drink wine with [Nickerson's] mother." Plaintiff also claims that Nickerson uttered anti-Semitic remarks, including: (i) commenting on plaintiff's "Jewish

3

money," (ii) discussing plaintiff's "trust fund," and asking where her "Jewish money" came from, and (iii) commenting that plaintiff purchased her big house with "Jewish money." Plaintiff also claims that Nickerson encouraged other employees to treat plaintiff differently because of her Jewish faith and that Erin Jacobsen, the operations department head at the Fairfax fitness center, called plaintiff a "JAP" (Jewish American Princess).

- o Defendant disputes that any anti-Semitic or ageist comments were made by any of its employees, including Nickerson.

Given the factual record on summary judgment, it is necessary to determine whether summary judgment is appropriate as to any of plaintiff's claims or whether triable issues of material fact exist as to some or all of plaintiff's claims.

## II.

The standard for summary judgment is too well-settled to require extensive elaboration here. Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

# III.

## A.

Plaintiff claims that she was treated differently from other employees because of her Jewish faith and age, in violation of Title VII and the ADEA. To avoid summary judgment on her Title VII and ADEA disparate treatment claims plaintiff can either produce direct of evidence of age and religious discrimination or rely on the *McDonnell-Douglas* burden shifting framework.

### 1.

Here, plaintiff has failed to produce direct evidence of discriminatory animus against plaintiff because of her age or religion. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)). Discriminatory statements standing alone are insufficient to state a claim; a plaintiff must also show "a nexus between the discriminatory statements and the employment action." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 314 F.3d 657, 665 (4th Cir. 2003); *see also Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 782 (E.D. Va.), aff'd, 352 F. App'x 778 (4th Cir. 2009) ("Even if an apparently discriminatory statement exists, it does not create direct evidence of discrimination unless it has a nexus with the employment decision."). In other words, evidence is "direct" if it "proves [the] existence of [discriminatory intent] without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (internal marks and

citation omitted); *Fassbender v. Correct Care Sols.*, LLC, 890 F.3d 875, 883 (10th Cir. 2018); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 186 (5th Cir. 2018).

Although plaintiff testified in her deposition that Nickerson made discriminatory remarks about her religion and age, including calling her "over the hill" and commenting on her "Jewish money," plaintiff has not produced any evidence to connect these statements to the alleged adverse employment action. In other words, these remarks – some of which occurred years before any adverse employment action allegedly occurred – do not prove, without inference or presumption, that plaintiff was discharged for an impermissible reason. These comments are simply too remote from plaintiff's purported discharge on March 9, 2017, to constitute direct evidence of discriminatory discharge.

Because plaintiff has produced no evidence linking these alleged discriminatory statements to the purported adverse employment action, her Title VII and ADEA disparate treatment claims cannot survive summary judgment based on direct evidence of discrimination. *See*, *e.g.*, *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001) ("In the context of Title VII, direct evidence [may] include[] any statement or written document showing a discriminatory motive on its face."). Accordingly, plaintiff's disparate treatment claims survive only if she makes out *prima facie* cases under the *McDonnell-Douglas* burden shifting scheme.

## 2.

Where, as here, plaintiff fails to produce direct evidence that her termination was discriminatory she can nonetheless survive summary judgment if she establishes *prima*

6

*facie* cases for religious and age discrimination. But a review of the factual record discloses that plaintiff has not produced admissible record evidence to establish *prima facie* cases for either religious or age discrimination; and therefore, defendant's motion for summary judgment must be granted as to those claims.

To state a *prima facie* case for disparate treatment under Title VII, plaintiff must produce record evidence demonstrating: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012). Plaintiff can clearly establish the first element of the *prima facie* case because plaintiff is Jewish and is therefore a member of a religious class protected by Title VII. There is also ample evidence that plaintiff performed her job satisfactorily. The third element of the *prima facie* case is more troublesome. The great weight of the record evidence points to the conclusion that plaintiff resigned from her position; however, plaintiff testified in her deposition that she did not intend to resign and was instead discharged against her will.[3] This apparent dispute

---

[3] There is persuasive legal authority for proposition that the non-moving party cannot manufacture a material dispute through self-serving deposition testimony or a conclusory affidavit when the great weight of the record evidence contradicts the self-serving statement. *See Larken v. Perkins*, 22 F. App'x 114, 115 (4th Cir. 2001) ("[Plaintiff] filed only his own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, which the district court properly found to be insufficient to stave off summary judgment." citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989). *See also Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) ("In light of both his earlier testimony and the other record evidence, Irving's subsequent self-serving deposition testimony is insufficient to raise a genuine issue of material fact."); *Teller v. Dogge*, 8 F. Supp. 3d 1228, 1234 (D. Nev. 2014) ("Self-serving testimony, made when an individual is faced with summary judgment, that contradicts clear evidence on the record need not be given credence by the court.") For the purposes of this summary judgment analysis,

7

over the adverse employment element may be avoided by assuming, without deciding, that plaintiff was, as she contends, terminated.[4] Even assuming plaintiff was terminated, plaintiff's disparate treatment claim still fails because she cannot prove the fourth element of the *prima facie* case, namely that she was treated less favorably than similarly situated employees outside the protected class.

In this regard, plaintiff has produced no evidence that comparable non-Jewish employees were treated more favorably than she was. In other words, plaintiff's Title VII disparate treatment claim fails because she has not identified any comparators, much less comparators who are similarly situated. *See Hurst v. D.C.*, 681 F. App'x 186, 189 (4th Cir. 2017) (noting that proof of similarly situated comparators satisfies the fourth element of a disparate treatment claim); *see also Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010). Moreover, plaintiff has produced no evidence showing she was discharged "under circumstances giving rise to an inference of unlawful discrimination." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (holding that comparator evidence may not be required to prove the fourth element of the *prima facie* case if plaintiff

---

however, plaintiff's position that she never resigned and was instead discharged will be taken as true.

[4] Not every factual dispute precludes summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 2d 350, 353 (S.D.N.Y. 1999) ("[T]he mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue.").

produces other evidence that shows the adverse employment action was rooted in discriminatory animus). Accordingly, plaintiff has not produced sufficient evidence to establish the fourth element of the *prima facie* case for Title VII religious discrimination.

Plaintiff's age discrimination claim fares no better. Plaintiff could have established a *prima facie* case for age discrimination had she produced record evidence establishing (1) that she is a member of a protected class, *i.e.*, at least 40 years of age; (2) that she suffered an adverse employment action; (3) that she was replaced by a substantially younger employee; and (4) that age was the "but-for" cause of defendant's adverse employment action.[5] *See Buchhagen v. ICF Intern., Inc.*, F. App'x 217, 220 (4th Cir. 2013); 29 U.S.C. § 631(a). To be sure, plaintiff has established the first and third elements of the *prima facie* case because she is over the age of forty and was replaced by someone who was approximately fifteen years her junior. *See DeBord v. Washington Cty. Sch. Bd.*, 340 F.Supp.2d 710, 714 (W.D. Va. 2004) ("Courts have generally held that age differences of 10 or more years are sufficiently substantial to meet the requirement of the fourth prong of the *prima facie* case." *citing Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–38 (6th Cir. 2003)). The second element of the *prima facie* case – *i.e.* that plaintiff suffered an adverse employment action – is problematic for the same reasons discussed above. But,

---

[5] Notably, the causation standard differs between a Title VII disparate treatment claim and an ADEA disparate treatment claim. Under Title VII, discrimination need only be a motivating factor for the adverse employment action, whereas under the ADEA discrimination must be the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.").

here again, resolution of the arguably disputed adverse employment element can be avoided because plaintiff failed to produce evidence permitting a reasonable juror to conclude that her age was the but-for cause of any adverse action.

The evidence shows that defendant promoted plaintiff to a management role when she was 54 years old. In the absence of any other evidence showing that plaintiff's age led to her alleged discharge, it would be ridiculous to infer that defendant hired and then promoted plaintiff knowing her age and then fired her thereafter because of her age. For this reason, plaintiff's age discrimination claim fails, and summary judgment must be granted to defendant on this claim.

## B.

For her Title VII and ADEA hostile work environment claims to survive summary judgment, plaintiff must show that a reasonable jury could find that the alleged conduct by her supervisor and fellow employees: (1) was unwelcome; (2) was based on her age and/or religion; (3) was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) was imputable to her employer. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *Baqir v. Principi*, 434 F.3d 733, 745 (4th Cir. 2006)). Stated differently, a hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quotation marks

omitted). In other words, hostile work environment claims "are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

**1.**

Plaintiff's ADEA hostile work environment claim is dead on arrival. Stray comments by Nickerson that plaintiff was "over the hill" or needed to befriend his mother are not sufficiently severe or pervasive to alter plaintiff's conditions of employment or to create an abusive working environment. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). That's precisely what we have here. Plaintiff was very likely teased about her age on occasion – after all she worked in an industry where youth and vigor are particularly prized. But none of the evidence reveals that this teasing was sufficiently serious to create a hostile work environment. Accordingly, summary judgment must be entered on behalf of defendant on plaintiff's ADEA hostile work environment claim.

**2.**

Plaintiff's Title VII hostile work environment claim stands on different ground. In her deposition, plaintiff testified that Nickerson referred to her "Jewish money" on numerous occasions and that another employee referred to her as a "Jewish American Princess." These statements are sufficiently severe to create a hostile work environment.

There are certain words and phrases that are loathsome. The n-word is a prime example. That word, because of its long and violent history, is no longer permissible and

if uttered in the workplace can "create an abusive working environment in an instant." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 496 (4th Cir. 2015). Use of the n-word in the workplace is "degrading and humiliating in the extreme" and is so severe that it need not be pervasive to create a hostile work environment. *Id.* Because the record does not warrant classifying Nickerson's alleged anti-Semitic comments as "pervasive," the question becomes whether references to "Jewish money," and "Jewishness" are so severe as to create a hostile work environment. This question calls for a simple answer: references to "Jewish money" and "Jewish American Princess" and other derogatory remarks associated with Judaism, like use of the n-word, are sufficiently severe to create, without more, a hostile work environment in an instant.

America has a long history of discrimination and violence against Africans involuntarily brought to this country in chains and their descendants; slavery, Jim Crow and persistent racism are manifestly this country's greatest sins. It is because of this history that use of the n-word in the workplace unquestionably creates a hostile work environment. Similarly, the history of violence and discrimination against Jews has spanned the pages history dating back millennia. Whether it be the Alhambra Decree of 1492 (the zenith of the Spanish Inquisition), the Russian pogroms, or Hitler's extermination camps, few have suffered more or longer than Jews.[6] And America has not been immune to the plague of

---

[6] Phyllis Goldstein, *A Convenient Hatred: The History of Antisemitism*, Facing History and Ourselves National Foundation (2012); William Nicholls, *Christian Antisemitism: A History of Hate*, Rowan & Littlefield (1993).

anti-Semitism. One need not look far to find tragic examples of anti-Semitism in this country.[7]

Much of this historical antipathy towards Jews was grounded in economic antisemitism,[8] which makes comments about "Jewish money" all the more objectionable and offensive. These words and phrases about Jews, like the n-word, are so serious and severe that they instantly signal to an employee that he or she is unwelcome in the work place because of his or her religion.[9] Here, plaintiff alleges her supervisor and co-workers made these comments about her religion and, as at least one circuit court has noted, nothing

---

[7] There is a long history of anti-Semitism in this country and these are but a few examples:

    (i)    the lynching of Leo Frank in 1915;
    (ii)    the bombing of the Hebrew Benevolent Congregation in 1958;
    (iii)    the attack on the Temple Beth-Israel in 1960;
    (iv)    the 1977 shooting at the Brith Sholom Kneseth Israel synagogue;
    (v)    the 1985 murder of the Goldmark family;
    (vi)    the 1986 murder of Neal Rosenblum;
    (vii)    the Crown Heights riot;
    (viii)    the 1994 Brooklyn Bridge shooting;
    (ix)    the 1999 Jewish Community Center shooting in Los Angeles;
    (x)    the 2009 Holocaust museum shooting;
    (xi)    the 2014 Overland Park shooting; and
    (xii)    the Tree of Life synagogue shooting in Pittsburg.

*See* Isabel Fattal, *A Brief History of Anti-Semitic Violence in America*, The Atlantic, October 28, 2018.

[8] One need only look to Shakespeare's *The Merchant of Venice* or Dickens' *Oliver Twist* to find popular characterizations of Jews as degenerate and moneygrubbing.

[9] It is important to note that not every utterance of the word "Jew" or "Jewish" in the workplace will create a hostile work environment. For example, a non-Jewish co-worker may ask a Jewish co-worker "are you Jewish," without subjecting their employer to liability under Title VII for hostile work environment. In other words, use of "Jew" or "Jewish" must be pejorative or hateful to create a hostile work environment. Thus, the inquiry will almost always be a context-specific.

more is required at this stage to establish the first three elements of a hostile work environment claim.[10] The only remaining issue is whether plaintiff has produced evidence in the summary judgment record that demonstrates that defendant either knew or should have known about the hostile work environment created by Nickerson and other employees and did nothing to remedy the situation.

It is well-settled that an employer may be liable for hostile work environments created by co-workers and third parties "if it knew or should have known about the harassment and failed to take effective action to stop it ... [by] respond[ing] with remedial action reasonably calculated to end the harassment." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir.2008) (internal quotation marks omitted). Here, one of defendant's corporate employees, Jennifer Lucas, testified that when she visited the gym to observe Nickerson and other employees, she witnessed Nickerson saying "very derogatory [things] about . . . [plaintiff's] age or [plaintiff's] religion." Dep. Jennifer Lucas 31:12-16. Ms. Lucas also testified that she emailed her superiors about Nickerson's behavior towards plaintiff because it made Ms. Lucas feel uncomfortable. *Id.* Because Ms. Lucas, as one of

---

[10] *See Shanoff v. Illinois Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001) (holding that comments by plaintiff's supervisor like "[I'm] going to keep your white Jewish ass down," and "I know how to handle white Jewish males," were sufficient to create a hostile work environment). Admittedly, some courts have viewed this issue differently. *See*, *e.g.*, *Milam v. Pafford EMS*, 729 F. App'x 632, 637 (10th Cir. 2018) (holding that fellow employees calling plaintiff a "f—ing Jew" and plaintiff's supervisor telling him not to "pull the Jew card on me," did not create a hostile work environment); *Goode v. Billington*, 932 F. Supp. 2d 75, 88 (D.D.C. 2013) (holding that there was no hostile work environment when fellow employees posted a sign labelled "Good Riddance Jew Boy" outside the plaintiff's office and also stole a picture of Jerusalem from plaintiff's office).

14

defendant's corporate representative, witnessed Nickerson's comments and reported Nickerson's behavior to her superiors, there is ample evidence to permit a reasonable jury to find that defendant knew or should have known about Nickerson's derogatory statements about plaintiff's religion.

For these reasons, defendant's motion for summary judgment on plaintiff's Title VII hostile work environment claim must be denied.

## C.

Plaintiff's final claim is for retaliation. This claim also fails because plaintiff has not produced sufficient evidence in the summary judgment record to permit a reasonable jury to find that plaintiff's protected activity was the cause of her discharge.

To establish a *prima facie* case of retaliation, plaintiff must prove three elements: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). At the *prima facie* stage, plaintiff must demonstrate a causal link between the adverse employment action(s) and the protected activity.[11] *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). To establish a causal link, plaintiff must first show that the defendant

---

[11] The Fourth Circuit has stated that the "but-for" causation standard governing Title VII retaliation cases does not apply at the *prima facie* stage; but instead applies later at the pretext stage. *See Foster*, 787 F.3d at 252.)

knew of her protected activity. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

Logically, there can be no causation where, as here, the purported cause happens after the effect. Plaintiff claims she was fired by Nickerson on March 9, 2017. Plaintiff's protected activity did not occur until March 10, 2017. Protected activity that occurred a day after the purported adverse employment action could not have caused plaintiff's discharge. To avoid this logical conclusion, plaintiff claims that she was not truly discharged until March 13, 2017, when Hernandez, the senior general manager, confirmed she was terminated. This hail-Mary argument plaintiff makes fails because the record unmistakably establishes that plaintiff either resigned or was discharged on March 9, 2017. Thus, plaintiff's retaliation claim fails for the most obvious reason: it is factually impossible.

## IV.

For the reasons set forth above, defendant's motion for summary judgment will be granted in part and denied in part.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
November 13, 2018

/s/
T. S. Ellis, III
United States District Judge